# IN THE COURT OF APPEALS OF IOWA

No. 24-1650
Filed February 19, 2025

**IN THE INTEREST OF S.H., D.S., and T.W.,**
**Minor Children,**

**L.W., Mother,**
          Appellant.

_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, Judge.

A mother appeals the termination of her parental rights to three children.

**AFFIRMED.**

Tonya A. Oetken of Oetken Law Firm, Inc., Ankeny, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Jami J. Hagemeier of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

Considered by Tabor, C.J., and Schumacher and Sandy, JJ.

**TABOR, Chief Judge.**

A mother, Lateesha, challenges the juvenile court order terminating her parental rights to her daughters, S.H. (born in 2019) and T.W. (born in 2016), and her son, D.S. (born in 2018). First, Lateesha contends the State did not offer clear and convincing evidence to support a statutory ground for termination. Second, she asserts that terminating her rights was not in the children's best interests. Third, she believes that her close bond with the children should preclude termination. Finally, she contends that the State did not make reasonable efforts to reunify their family. After a fresh look at the evidence, we reach the same conclusions as the juvenile court.[1] Lateesha cannot provide the stability that the children need. We thus affirm the termination order.[2]

I. **Facts and Prior Proceedings**

This child-welfare case began in February 2022 when Lateesha was arrested in Iowa on a warrant from Wisconsin. Without anyone to care for her three children, she consented to the Iowa Department of Health and Human Services taking custody. One month later, the juvenile court affirmed the removal and adjudicated S.H., D.S., and T.W. as children in need of assistance (CINA). The department placed the children in foster care.[3] These events marked the start

---

[1] "We review termination proceedings de novo, examining both the facts and law and adjudicating anew those issues properly preserved and presented." *In re A.R.*, 932 N.W.2d 588, 589 n.1 (Iowa Ct. App. 2019). The juvenile court's factual findings do not bind us, but we give them weight, especially when deciding whether to believe a witness. *Id.*

[2] The juvenile court also terminated the parental rights of the children's putative father. But he does not appeal.

[3] The children have been in several different placements. At the time of the termination hearing, all three were together with a foster family in the Quad Cities.

of what the juvenile court called this family's "convoluted and lengthy journey" with the department.

As that court noted: "the removal began to reveal the hidden neglect and abuse of Lateesha's children." On neglect, the department reported "ongoing concerns" about the mother's lack of parenting skills. For example, the department observed: "significant teeth decay, matted hair, all three children in diapers and able to change their own, appeared to not have been bathed recently, inappropriate disciplinary techniques and unmet medical needs." The youngest child, S.H., needed emergency dental surgery.

As for abuse, child protective services issued a founded assessment that Lateesha "whipped" four-year-old D.S., leaving scars on his feet, and five-year-old T.W., leaving a scar on her shoulder. T.W. told the child protective worker that she "did not feel safe with her mom because she 'whoops her with a belt.'"

Lateesha denied the allegations of physical abuse. In her petition on appeal, the mother recalled testifying that "she did not initially want to place blame on her youngest child [then two years old] for using a phone cord on her siblings, but stated in her testimony that was the only way any marks on the other children could have occurred." The juvenile court concluded: "Her story is simply not credible." The court emphasized Lateesha's lack of accountability.

The children were out of their mother's custody for over two years before the State petitioned to terminate parental rights. During that time, Lateesha did participate in court-ordered mental-health therapy. But she showed little understanding of the children's medical and psychological needs. Beyond that deficiency, her visitation with the children was inconsistent—even when the

children were moved to a foster home in eastern Iowa to be closer to her location. And her housing was unstable. She stayed in various shelters after the children's removal—moving from Illinois, to Wisconsin, to Iowa, then back to Illinois. Late in the CINA case, Lateesha refused to disclose her address, alleging fear of domestic violence from the children's father. But as the court noted, the department could not assess the safety or appropriateness of her housing without her cooperation.

In March 2024, the State petitioned to terminate Lateesha's parental rights, citing Iowa Code section 232.116(1), paragraphs (f) and (i) (2024). After holding the termination trial across three days that summer, the court granted the State's petition on both grounds. Lateesha appeals.

## II.     Analysis

### A. Error Preservation

As its opening, the State argues that "the mother has waived error on each issue referenced in her appeal." The State contends that the mother failed to offer factual support for her legal assertions or apply the facts to the law. The State also urges that the mother waived error by failing to produce a complete record as required by Iowa Rule of Appellate Procedure 6.803(1). Under the special rules for termination, Lateesha cannot reply to the State's claim. *See* Iowa R. App. P. 6.203. But even without her response, we find that the mother has minimally complied with the appellate rules for expedited appeals and reject the State's preservation argument.[4]

---

[4] That's not to say that the petition on appeal is a model of clarity. Not integrating the material facts with the legal issues hinders our ability to analyze her claims.

**B. Discussion**

Our analysis in termination appeals generally takes three steps. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, we must decide whether the State proved by clear and convincing evidence a ground for termination under section 232.116(1). *Id.* Second, we assess whether termination was in the children's best interests under the framework of section 232.116(2). *Id.* Third, if the State meets those two prongs, we consider whether to apply any permissive exceptions in section 232.116(3). *Id.* After those three steps, we address any other issues the parent raises.

**1. Statutory Ground for Termination**

Lateesha disputes the State's proof for paragraphs (f) and (i) under section 232.116(1). When the juvenile court relies on more than one paragraph, we may affirm "on any ground . . . supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We rest our decision on paragraph (f). It has four elements: (1) the children are four or older; (2) they have been adjudicated as CINA; (3) they have been removed from home for the last twelve consecutive months; and (4) they cannot be returned to the parent's custody at the present time. Iowa Code § 232.116(1)(f); *see In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (reading "present time" as the date of the termination hearing).

The mother only contests the fourth element. Lateesha insists she is "in a position for the children to be returned to her custody at this time." To that end, she highlights her current employment and pursuit of college classes. She recounts working with her therapist to address trauma and domestic violence. And

while acknowledging past struggles with housing, she asserts that "she is now in a place that is close to family that would allow her to have custody of her children."

But the department social worker testified: "We can't even identify where [Lateesha] lives." Lateesha was unwilling to share her address at the time of the termination, so neither the department nor the court could verify that she could provide a safe home for the children. Beyond housing, the mother's parenting abilities remained in question. She delayed the medical treatment the children needed. And she refused to acknowledge the physical abuse she inflicted on D.S. and T.W.—instead foisting blame on their then two-year-old sister. *See In re D.R.*, No. 18-1116, 2018 WL 4361087, at *2 (Iowa Ct. App. Sept. 12, 2018) (finding similar refusal supported termination of mother's parental rights). The State offered ample evidence to support termination under paragraph (f).

## 2. Best Interests

Lateesha next argues that termination was not in the children's best interests under section 232.116(2). Under that provision, we prioritize the children's safety; the best placement for furthering their long-term nurturing and growth; and their physical, mental, and emotional condition and needs. *See In re A.B.*, 957 N.W.2d 280, 300 (Iowa 2021) (discussing Iowa Code section 232.116(2)). We also consider the children's integration into their foster family. *See* Iowa Code § 232.116(2)(b).

The State proved that despite two years of being offered services, Lateesha still could not offer the stability that these young children need. She continued to deny the founded child abuse and did not help resolve the children's medical issues. Meanwhile, the children were doing well in their current foster placement.

The foster parents supported Lateesha but were willing to be the concurrent plan for the children if the court terminated her parental rights. Like the juvenile court, we find that termination of Lateesha's parental rights is in the children's best interests so that they can stop experiencing "chaos" and "know what to expect" in the future.

### 3. Permissive Exception

Having found that the State met its burden under the first two steps, we turn to Lateesha's argument that her close bond with the children should have precluded termination. *See* Iowa Code § 232.116(3)(c) (requiring parent to show by "clear and convincing evidence that the termination would be detrimental to the child[ren] at the time due to the closeness of the parent-child relationship"). Without giving specifics, she contends that severing that bond would hurt the children. The record refutes Lateesha's contention.

No doubt the children love their mother. But they have suffered profound disappointment because of Lateesha's inconsistency. As the social worker explained: "[T]hey're confused. They don't know why Mommy Lateesha doesn't show up or why they can't see her regularly." Lateesha has not shown the sting of termination outweighs the harm caused to the children by protracted uncertainty.

### 4. Reasonable Efforts

Finally, Lateesha contends that the State did not make reasonable efforts to reunify her family through the date of termination. *See* Iowa Code § 232.102A(1)(a). In determining whether the State has made reasonable efforts, we consider the "type, duration, and intensity of services or support offered or provided" to the children and their family. *Id.* The mother did move for additional

services before the permanency hearing, and the juvenile court found services were reasonable. But in her petition on appeal, the mother does not specify what services or support were missing at the time of the termination hearing. True, the petition's fact section mentions transportation assistance, family therapy, and visitation in a paragraph about reasonable efforts. But those passing references are too ambiguous to prompt appellate review. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("A broad, all encompassing argument is insufficient to identify error in cases of de novo review."). And even if we could reach Lateesha's reasonable-efforts claim, the problem was not with the department's services but with the mother's tepid response to those services. *See id.* at 495. On this record, the juvenile court properly ordered termination of parental rights.

**AFFIRMED.**